## HONEYCUTT v. NYQUIST, PETERSEN & CO.

SUMMONS—SUBSTITUTED SERVICE—APPEARANCE—WAIVER OF DEFEC-
TIVE SERVICE—MISNOMER—MOTION TO QUASH AND DISMISS—
JURISDICTION.

1. The statutory provision for serving summons by leaving a
   copy at the usual place of residence of the defendant does
   not contemplate a mere temporary stopping or abiding place
   as distinguished from a regular or fixed and permanent res-
   idence.

2. A resident of another state does not have such a residence in
   this state as authorizes a service of summons upon him by
   leaving a copy at his usual place of residence, who comes
   here temporarily to engage in railroad grading work, and
   lives in tents at the grading camp while engaged in such
   work for about three months.

3. A service of a summons is defective where it is served upon a
   non-resident defendant by leaving a copy with a person in
   his employ over the age of fourteen years at a tent in a
   grading camp temporarily occupied by such defendant while
   engaged in railroad grading work.

4. Acceptance by defendant's attorney of the service of a motion
   to sell attached property *pendente lite* does not amount to
   a general appearance in the cause.

5. An unqualified appearance in court by a defendant with his
   attorney· at the time set for the hearing of a motion to sell
   attached property and entering into an agreement for a con-
   tinuance of such hearing constitutes a general appearance
   in the cause, and waives defective service of summons on
   such defendant.

6. A separate ground of a motion to quash service and dismiss
   the action being that defendant was not sued by his true
   name, in which the true name was alleged, the legal effect
   of the motion is the same as though an independent motion
   had been filed on that ground.

7. The proper method of taking advantage of the misnomer of a
   party is discussed.

8. If the allegation of a motion to quash service and dismiss the
   action on the ground of the misnomer of the defendant and
   setting up the true name be sustained, an amendment should
   be ordered correcting the name to agree with the facts, but
   a dismissal would not be proper.

9. The filing of a motion to quash service and dismiss the action
   on the ground of misnomer of defendant, and stating

therein the true name of the defendant, is a waiver of defective service of summons and amounts to a general appearance to the action.

10. The fact that a defendant is sued by initials in the designation of the Christian name is not ground for quashing service of summons and dismissing the action.

11. It is generally sufficient to designate a person in civil and criminal proceedings in the name by which he is usually known.

[Decided November 3, 1903.]                    (74 Pac., 90.)

ERROR to the District Court, Albany County, HON. CHARLES W. BRAMEL, Judge.

Action by Nyquist, Petersen & Co. against J. V. Honeycutt and another to recover a money judgment. The plaintiff sued out an attachment at the commencement of the action, and recovered a judgment against defendant Honeycutt, who thereupon prosecuted error. The material facts are stated in the opinion.

*C. P. Arnold,* for plaintiff in error.

The attachment was secured on the ground of the non-residence of the defendant, and yet the summons was served at his usual place of residence. The defendant cannot be held a non-resident so as to authorize attachment, and a resident at the same time to authorize substituted service of summons. In fact, the defendant was a non-resident. He was temporarily within the State, living in a tent, and there was no authority for substituted service. The tent was not his residence. (White v. Primm, 36 Ill., 416; Blyth v. Hickley, 84 Fed., 228; Ames v. Winsor, 19 Pick., 247.) A man can have but one usual place of residence; and within the meaning of the statute authorizing substituted service, the residence must be the legal residence; and "domicile" and "residence" under such statutes are synonymous terms. (Wood v. Roeder, 45 Neb., 311; Bradley v. Frazer, 54 Ia., 289; Campbell v. White, 22 Mich., 178; Grant v. Jones, 39 O. St., 515; · Church v.

Crossman, 49 Ia., 444; Gardner v. Board, 5 Dak., 259; 10 Ency. Law (2d Ed.), 9.)

The service was void for the additional reason that the defendant was sued by initials and not by his true name. (R. S., Secs. 3533, 3484, 3592; Scofield v. Jennings, 68 Ind., 233; Enewold v. Olson, 39 Neb., 59; 14 Ency. Pl. & Pr., 273; Perkins v. McDowell, 3 Wyo., 328; Slocum v. McBride, 17 O., 607.)

The acceptance of service of the motion to sell attached property was not a general appearance. The acceptance of service merely obviated the necessity of making service, and had service been made it would not have conferred jurisdiction of the defendant in the action. It is no part of the duty of an attorney to admit service for his client. (Starr v. Hall, 87 N. C., 381; 3 Ency. Law, 323.) Neither did the presence of defendant with his attorney in the court room confer jurisdiction to render personal judgment against defendant. They had a right to be there as spectators without incurring such consequences. They had a right also to object to any action being taken because the action had not been properly brought, and to assent to a postponement of the hearing because the court was otherwise engaged. They did not ask for a continuance, and the motion did not affect the merits of the action. An appearance is the process by which a person, against whom a suit has been brought, submits himself to the jurisdiction of the court. (1 Daniels Ch. Pl. & Pr., 536.) It is a submission to the jurisdiction in obedience to the process. (Grigg v. Gilmer, 54 Ala., 430; Shirley v. Hagar, 3 Blackf., 225; Norblett v. Farwell, 38 Cal., 155; Talpey v. Doane, 3 Colo., 22.) The actions of defendant did not amount to an appearance. (Crary v. Barber, 1 Colo., 172.) The defendant did not ask the aid of the court in any way, and hence it cannot be held that he submitted himself to the jurisdiction of the court. This case is to be distinguished from those cases holding a defendant to have entered an appearance by filing a motion which is not limited to matters of jurisdiction.

*N. E. Corthell,* and *Burke & Clark,* for defendants in error.

If the temporary residence of the defendant below should be considered within the scope of the statute for substituted service, then the service was sufficient. (Leonard v. Stout, 8 Vroom, 495.) But the defendant several times entered his voluntary appearance and thus became subject to the jurisdiction of the court. (R. S., Sec. 3515; Jenkins v. Jeffrey, 3 Wyo., 669; Bank v. Anderson, 6 id., 518.) An appearance is presumed to have been general unless shown by the record to be special. It may consist in any act indicating that the party submits himself to jurisdiction, or participates in the proceedings in any way, or otherwise recognizes the action as pending and acts on that theory. (3 Ency. Pl. & Pr., 502-514; 2 id., 590, 632.) An appearance may be evidenced by filing a pleading, notice, motion; by consent to a hearing, a continuance, a change of venue, a removal or other order; it may be expressed or implied, in person or by attorney; an appearance for any other purpose than to object to the jurisdiction of the court is general. (Car Co. v. Ry. Co., 53 Minn., 129; Wood v. Young, 38 Ia., 106; Frank v. Leigh, 33 S. E., 762; Raymond v. Nix (Okl.), 49 Pac., 1111; Gorham v. Tanquerry (Kan.), 48 id., 916; Elliot v. Lawhead, 43 O. St., 171; Handy v. Ins. Co., 37 id., 366; Ulner v. Hiatt, 4 G. Greene, 439; Clark v. Blackwell, id., 441; Ausbach v. Ferguson, 71 Ia., 144; Baisley v. Baisley, 113 Mo., 544; Bazzo v. Wallace, 16 Neb., 290; Stevens v. Ins. Co., 29 id., 187; Thompson v. Pfeiffer (Kan.), 71 Pac., 828; Crowell v. Galloway, 3 Neb., 215; Aultman v. Steiman, 8 id., 109; Long v. Newhouse, 57 O. St., 348; Reed v. Chilson, 142 N. Y., 152; Olcott v. McLean, 73 id., 223; Keeler v. Keeler, 25 Wis., 552.)

Where a party, as in this case, asks to have the case dismissed, it is a general appearance. (Bucklin v. Strickler, 32 Neb., 602; Handy v. Ins. Co., 37 O. St., 366; Mahohn v. Marshall, 29 id., 611; Abbott v. Semple, 25 Ill., 107; R. R. Co. v. Combs, 13 Ind., 490.)

The objection to the name by which he is sued raised by defendant is proper subject of a plea in abatement, and further he asked that the case be dismissed. The appearance in the attachment proceeding amounted to a general appearance. His attorney had a right to represent him, and this includes the right to even accept service of summons. (Hendrix v. Fuller, 7 Kan., 331; Taylor v. Sutton, 6 La. Ann., 709; Backus v. Burke, 62 Minn., 272; Felder v. Johnson, 1 Bailey, 624; Marling v. Robrecht, 13 W. Va., 440.)

POTTER, JUSTICE.

The defendants in error brought this suit in the District Court for Albany County against J. V. Honeycutt and Ellis Robb upon two causes of action to recover a money judgment. The first cause of action was founded upon an account stated, and the second upon an account for goods sold and delivered. A writ of attachment was sued out at the commencement of the action and certain personal property was levied on, consisting generally of horses, wagons and property belonging to a grading outfit. The sheriff's return upon the summons showed that service thereof upon defendant Honeycutt had been made by leaving a copy at his usual place of residence with a person in his employ over the age of 14 years. Said defendant filed a motion to quash the service of summons and dismiss the action, alleging that he appeared specially and for the purposes of the motion only. The motion was based on six grounds, as follows:

"1. A copy of the summons was not served upon this defendant.

"2. A copy of said summons was not left at the usual place of residence of the said defendant.

"3. That said defendant, at the time of the alleged service of the summons herein, was and ever since has been a non-resident of the State of Wyoming, and did not then have and does not now have a place of residence in the said County of Albany.

"4.    That it is not true that a copy of the summons issued herein was left at the usual place of residence of said defendant.

"5.    That the court acquired no jurisdiction over this defendant by the pretended service of summons in this action.

"6.    That the said defendant is not sued by his true name, and that the true name of said defendant is James V. Honeycutt."

The motion was supported by attached affidavits setting forth that the defendant's true name was James V. Honeycutt, and that he was a resident of the Territory of Oklahoma, but was temporarily within Albany County, in this State, engaged in temporary employment in construction work along the line of the Union Pacific railroad, and had no permanent place of abode within the county.

On the hearing of the motion the defendant offered in evidence the affidavit for attachment, which alleged that he was a non-resident of this State, also the affidavits attached to the motion, and two additional affidavits to the effect that the full name of the defendant was James Vernon Honeycutt; that he was a *bona fide* resident of Oklahoma Territory; that in June, 1900, he went to Albany County temporarily and located a railroad camp, known as the Honeycutt camp, and engaged in work on the railroad with a grading outfit, remaining there until some time in September, 1900, and at said camp had two tents, one used for sleeping and the other for eating; but that he never established a  residence in the State.

The plaintiffs submitted the affidavits of two persons to the effect that they had known the defendant for more than two months while he had been in Wyoming, and that he had been commonly called and known as J. V. Honeycutt, and not as James V. or James Vernon Honeycutt. The plaintiffs introduced also a motion filed by them for an order to sell the attached property, and an acceptance of service thereon endorsed.

Thereupon the motion to quash service and dismiss the action was denied, and defendant excepted. The order denying the motion recites that on the 23d day of August, 1900, the defendant, by his attorney, accepted service of notice of the plaintiff's motion for an order to sell attached property; and in response to said notice said defendant, with his said attorney, appeared in court, and the court being otherwise engaged, said attorney agreed in open court with the attorney for the plaintiffs that the hearing upon the motion to sell be continued, and that it was accordingly continued; but that at the final hearing thereon the defendant did not appear in person or by counsel. A motion for new trial upon the motion to quash and dismiss was filed and denied, and the ruling excepted to. That motion was made on the grounds that the findings were contrary to law and not sustained by sufficient evidence, and that the court erred in overruling the motion to quash. A bill of exceptions was presented, allowed and signed preserving these exceptions.

Thereafter the defendant was ordered to plead, answer or demur on or before November 12, 1900. He did not further appear in the case except to present his bill of exceptions. On November 22, 1901, for failure of the defendant to further answer, plead or demur, he was adjudged to be in default, and final judgment was rendered in favor of the plaintiffs and against said defendant for the sum of $1,176, with costs.

The defendant brings the case to this court on error. It is contended that there was no legal service of summons, and that the court did not acquire jurisdiction over the person of plaintiff in error. On the other hand, it is contended that the various acts of the defendant and his attorney constituted a general appearance, and hence a waiver of any irregularities in the service.

In the case of an individual defendant, the statute requires the summons to be served by delivering a copy to the defendant personally, or by leaving a copy at his usual place

of residence with some member of his family or other person in his employ over the age of 14 years. (Rev. Stat., Sec. 3514.) The provision for leaving a copy at the usual place of residence does not contemplate a mere temporary stopping or abiding place as distinguished from a regular or fixed and permanent residence. And upon the showing made it is clear that the plaintiff in error did not have such a residence in Albany County as authorized the service of the summons by leaving a copy thereat. (Alderson on Jud. Wr. & Pr., pp. 176-183; Thomas v. Thomas, 96 Me., 223; Bradley v. Fraser, 54 Ia., 289; Wood v. Roeder, 45 Neb., 311; Ames v. Winsor, 19 Pick., 247; 19 Ency. Pl. & Pr., 628; Campbell v. White, 22 Mich., 178.) In Thomas v. Thomas, *supra,* the court said that "the word 'resident' in the statute means one having a permanent residence in the State as distinguished from one who is merely temporarily within the limits of the State." In that case the defendant, a non-resident, was only temporarily in Maine, and the service was held insufficient which had been attempted by leaving a copy at her usual and last place of abode. We do not understand this principle to be controverted by counsel for defendants in error; at least, it does not seem to be seriously insisted that the attempted service was legal. The contention is made chiefly upon the proposition that the court acquired jurisdiction by reason of the voluntary appearance of plaintiff in error; and this it is claimed resulted from the acceptance of service of a motion to sell the attached property, an agreement in open court to continue the hearing thereon, which occurred prior to the filing of the motion to quash; and also in consequence of the prayer of the motion that the action be dismissed.

We are not inclined to regard the acceptance of service of the motion to sell the attached property as in itself amounting to a general appearance in the action. On the 23d day of August, 1900, a motion was filed asking for an order for the sale of the property attached on the ground of the great expense connected with its care and custody,

and to that motion was attached a notice upon "M. C. Jahren, attorney for the defendants in the above entitled action," that the motion would be called up for hearing August 25, 1900, or upon such subsequent date as may suit the convenience of the judge.   Upon that motion appears the following endorsement: "Service accepted this 23d day of August, 1900.   M. C. Jahren, attorney for defendants." It seems to us that the defendant himself might have acknowledged or accepted service of the motion and signed a statement to that effect, without thereby appearing in the cause.   The object of a written acceptance was only to avoid the necessity of proving the service of the notice, if required.   An acknowledgment on the back of the summons or petition is expressly constituted by statute an equivalent of service.   But the paper referred to was not the summons nor petition. · It ought not to be held, we think, that a mere acknowledgment of service upon the defendant of such a motion operates as a submission of his person to the jurisdiction of the court for all purposes of the case.   It cannot be said that the fact that a defendant has engaged an attorney to look after his interests either generally or in a particular cause amounts to a voluntary general appearance, for it may occur that the attorney shall conclude that his client's interests will be better subserved by not appearing, or he may be engaged merely to enter a special appearance and contest the question of jurisdiction.

The same reasoning might apply in respect to the mere presence of the defendant and his attorney in court at the time fixed for the hearing of the motion, although it is unnecessary to decide that question. Certainly they would have had a right to be in court as spectators without submitting the person of the defendant to the jurisdiction of the court in a particular case pending therein, if they did not participate in any of the proceedings in the case.

But the presence of defendant and his attorney in the court room went beyond that of mere spectators.   It is evident from the recitals in the record that they were there

to attend the hearing on the motion for the sale of the attached property; and in open court counsel agreed to a postponement of the hearing. The appearance of defendant on that occasion does not seem to have been at all qualified. Although the mere acceptance of service of the motion as above stated would not, in our opinion, have constituted a general appearance, it became in this cause explanatory somewhat of the subsequent appearance in response to the motion. Counsel whose name was signed to the acceptance as attorney did not then qualify his employment; but it was followed by his presence with that of defendant in open court at the time stated in the notice, and an agreement as to the disposition of the matter at that time.

It has frequently been held, and we think it is the recognized rule, that a request for the continuance of a cause or an agreement to that effect, either orally in open court or by a writing filed in the cause, operates as a voluntary appearance. (2 Ency. Pl. & Pr., 633-634; Auspach v. Ferguson, 71 Ia., 144; Keeler v. Keeler, 24 Wis., 522; Baisley v. Baisley, 113 Mo., 544; Bazzo v. Wallace, 16 Neb., 290; Lane v. Leech, 44 Mich., 163.) In the Michigan case, above cited, the court said: "The motion for a continuance was a step in the cause, and one which meant that the action should be presently kept on foot, and there was nothing to qualify it." And in the Missouri case, where the cause was continued by agreement of plaintiff and defendant to the next term of court, it was held tantamount to a general appearance by the defendant. In Auspach v. Ferguson, *supra,* the defendant appeared before a justice of the peace on the return day, and, without plea, agreed with the plaintiff to a continuance of the cause to a subsequent day, and a continuance was had accordingly. The Iowa court said: "Where an order of court is obtained upon an agreement of parties, there is a virtual request made for the order by both parties. Now, we are not able to see how a party can make a request of a court which shall be of such a character as shall justify the court in

acting upon it, unless the party is to be regarded as in some way making an appearance.  The party invokes the action of the court.  If he does it orally he must, of course, be actually in court, either personally or by his authorized representative.  If he does it by writing, the writing must have been filed, either by himself personally or by his authorized representative, and that would constitute an appearance.  If the defendant had filed a motion and affidavit for continuance, no one would doubt that the act constituted an appearance.  The case before us is not different in principle."

It is true that the continuance agreed to was of a hearing upon a motion in an ancillary proceeding.  But the attachment proceedings were part of the case; and it is generally held that a motion to dissolve an attachment upon other than jurisdictional grounds is a general appearance in the cause.  On principle it is difficult to perceive any difference in this respect between an agreement for such a continuance and the postponement of the trial of the case itself.  The general rule is that an appearance for any other purpose than to question the jurisdiction of the court is general. · (2 Ency. Pl. & Pr., 632.)  And any action on the part of the defendant, except to object to jurisdiction, which recognizes the case as in court will amount to a general appearance.  (3 Cyc., 504, and cases cited.)  The presumption is that any appearance is general.  (2 Ency. Pl. & Pr., 632.)  It would seem, therefore, that the defendant had submitted himself to the jurisdiction of the court before his motion to quash service was filed.

But if it were not so, the motion itself must be construed as such an appearance as waived the defective service, for the reason that it was not confined to an objection to the service, or to jurisdictional objections.  The sixth, and a distinct ground of the motion, was that the defendant had not been sued by his true name, and it went further and stated what his true name was.  In legal effect this is the same as if an independent motion to quash and dismiss

had been filed on that ground. Counsel for plaintiff in error indeed seems to have so regarded it, as it is argued that there is no authority to sue a defendant by his initials, unless the suit is brought upon a written instrument so executed. (R. S., Sec. 3484.)

This is not a case where the defendant is sued by a fictitious name. Where that is done, the summons must contain the words "real name unknown," and service is then permissible only by delivering a copy to the defendant personally. (R. S., Sec. 3592.) · That provision was not taken advantage of. On the face of the petition and summons it could not be said that a fictitious name was employed, merely because the Christian name was designated by a letter or letters. In Perkins v. McDowell, 3 Wyo., 329, the plaintiff described himself as "J. M. McDowell," and the court, by Mr. Chief Justice VanDevanter, said: "While it does not occur frequently, there are many instances where single letters constitute the only Christian name. We cannot, then, judicially know that the letters 'J. M.' are not a name, and, as the petition does not disclose that the letters 'J. M.' are not the Christian name of the plaintiff, it follows that there is no defect apparent on the face of the petition in this respect."

In Taylor v. Insley (Colo.), 42 Pac., 1046, a motion had been made to quash the summons and strike the complaint from the files, "for the reason that there is no plaintiff, nor the name of any plaintiff, designated therein; the initials 'M. H.' preceding the word 'Insley,' as used therein, constituting no name." The Court of Appeals say: "But no authority is cited to show that 'M. H.' may not be the Christian name and all there is of it. I know of no good reason, legal or otherwise, why parents may not select any letter or letters of the alphabet as the name of a child; and, although each individual has a Christian and sur-name, there is no legal presumption, when a man sues as 'M. H.,' that that is not all there is of it, unless the fact is brought to the knowledge of the court by a plea in abatement, or in

some manner that will inform the court, not only that the letters used are initials, but what the name is ; in the language of the books, 'give the plaintiff a better writ.' " And, further : "The use of initials instead of full names has been indulged in to such an extent that to now hold that the courts had no jurisdiction would result disastrously."

Hence, had the motion attacked the petition and process on the sole ground that the defendant had been sued by the initials of his given name instead of the name itself, and stopped there, without disclosing what the name was—that is to say, had it been sought to quash summons and dismiss the action for the reason that the Christian name of defendant was designated by a letter only instead of the full name, it would have been without merit, relying upon what appeared on the petition and summons. But the motion went beyond that. It alleged that the defendant had not been sued by his true name, and, in the same connection, alleged his true name. In other words, then, it charged a misnomer ; and we are led to inquire as to the legal effect of the motion in that respect.

At common law misnomer was properly pleadable in abatement. (14 Ency. Pl. & Pr., 295 ; 1 Chitty Plead., 265, 266, 467 ; Krowski v. Mo. Pac. Ry. Co., 77 Mo., 362 ; Bliss Code Pl., Sec. 427 ; State ex rel. v. Bell Telephone Co., 36 O. St., 296.) It seems, however, that in some cases in the English courts the defendant was allowed, before otherwise appearing, to move a dismissal of the proceedings for the misnomer. (See Mann v. Carley, 4 Cow., 148 ; Herf & Co. v. Shulze, 10 O., 263.) And Mr. Bliss states that, under the Code, nothing seems to be settled upon authority as to the remedy, except that the objection for misnomer is waived by answering to the merits. (Bliss Code Pl., 427.) In some states the practice is to move for a correction of the mistake. (Beavers v. Baucum, 33 Ark., 722 ; Kenyon v. Semon, 43 Minn., 180.) In a case in New York it was held that the defense should be pleaded *quasi* in abatement, and the plaintiff should be given a better

writ by an allegation of the correct name. (White v. Miller, 7 Hun., 427.) It is said that a correction will always be made upon motion filed for that purpose, so that the defect cannot be looked upon as fatal in the strict sense of the term. (1 Kinkead Code Pl., Sec. 48.)

As pleas to the jurisdiction preceded pleas in abatement in the recognized order of pleading at common law, a plea in abatement waived any matter which might have been set up by a plea to the jurisdiction. (1 Chitty Plead., 456.) And so the various matters which might be pleaded in abatement were pleadable in a particular order, whereby each subsequent plea admitted that there was no foundation for the former, and precluded the defendant from afterwards availing himself of the matter (id.). The plea in abatement for misnomer was abolished in England by the Procedure Act of 3 and 4 William IV, Ch. 42, and a defendant was enabled only to compel the plaintiff to amend his declaration by stating the real name. (1 Chitty Pl., 266; Bliss Code Pl., 427.)

We have no statute specifically defining the method of taking advantage of misnomer. But the provision authorizing amendments permits a mistake in a name of a party either in a pleading or process to be corrected before or after judgment. (R. S., Sec. 3588.) It would seem, therefore, that the only effect of a motion, if that practice be adopted in reaching the question, would be to cause an amendment by correcting the name to agree with the facts, if the allegations of the motion should be found to be true. Pomeroy states that, under the reformed procedure, there is no difference in the methods of pleading in abatement and in bar, or of adjudicating upon them; and that the only difference is in respect to the conclusive effects of the judgments rendered upon them. (Pomeroy's Code Rem., Sec. 697.) In Ohio it was said that misnomer may be taken advantage of by plea in abatement. (State ex rel. v. Telephone Co., 36 O. St., 296.) And in that case it is held that the defect is not fatal to jurisdiction. It is probable

that the learned court referred not to a technical common law plea in abatement which, it is generally conceded, has been abolished by the Codes, but that it was intended to state that advantage should be taken of the alleged defect by way of abatement of the action in such method as might be deemed proper.

Whatever may be the better or the more proper method of attacking a suit or proceeding for a misnomer of a party, we think it clear that an appearance for that purpose is to be construed as a waiver of defective service of process. That would be the result by analogy to the common law order of pleading, and the common law method of reaching the objection. It is not to be doubted that pleading misnomer in abatement would at common law operate as a waiver of any irregularity in the service of process which might have been set up by plea to the jurisdiction. In the case at bar the right party was sued. He had a right to require the suit to be conducted against him by his true name; and when he moved to dismiss for the reason that he was sued by a name other than his true name, an amendment would necessarily have followed; and it is not perceived how he could then have been permitted to complain of the service of the summons on the grounds specified in the motion. We think that objection was waived. Indeed, the right to enter special appearance to object to misnomer is seriously to be doubted; and it is even to be questioned, we think, whether under the Code advantage of misnomer can be taken in any other way than by answer. (See Moak's Van Santwood's Pl., 385, 386; Pomeroy's Code Rem., Sec. 697.)

The authorities are not harmonious as to the effect of a misnomer when the defendant does not appear. Some cases hold a judgment to be void when rendered in the absence of the defendant under such circumstances, while in others it is held that where the party intended to be sued is served with process in which he is incorrectly named, he must appear and object to the misnomer, or he will be bound by

the judgment. Although where the service has been substituted or constructive, it is generally held that, in the absence of appearance, a defendant so sued would not be bound. (14 Ency. Pl. & Pr., 300-302.) But if the defendant in any case appears by his true name, or answers to the merits without raising the objection, he is clearly bound. (Id., 298.)

In the case at bar the plaintiff below introduced evidence to show that the defendant was known and called by the name in which he was sued; and that issue was tried by the court. It is sufficient generally to designate a person in civil or criminal proceedings in the name by which he is usually known. (14 Ency. Pl. & Pr., 277, 288.)

Our conclusion, therefore, is that the defendant's acts amounted to a voluntary appearance to the action, and gave the court jurisdiction of his person, notwithstanding the defective service. The judgment will be affirmed.

CORN, C. J., and KNIGHT, J., concur.